## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the ) <br> PENNSYLVANIA DEPARTMENT OF ) <br> ENVIRONMENTAL PROTECTION ) <br> ) | |
| Plaintiffs, ) <br> ) | Civil Action No. 16-1178 |
| v. ) <br> ) | Judge Nora Barry Fischer |
| CONSOL Energy Inc., CNX Coal Resources LP, and ) <br> Consol Pennsylvania Coal Company LLC ) <br> ) | **CONSENT DECREE** |
| Defendants. ) | |

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | JURISDICTION AND VENUE | 2 |
| III. | APPLICABILITY | 2 |
| IV. | DEFINITIONS | 3 |
| V. | CIVIL PENALTY | 9 |
| VI. | COMPLIANCE REQUIREMENTS | 11 |
| VII. | REPORTING REQUIREMENTS | 25 |
| VIII. | STIPULATED PENALTIES | 28 |
| IX. | FORCE MAJEURE | 33 |
| X. | DISPUTE RESOLUTION | 35 |
| XI. | INFORMATION COLLECTION AND RETENTION | 37 |
| XII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 40 |
| XIII. | COSTS | 41 |
| XIV. | NOTICES | 42 |
| XV. | RETENTION OF JURISDICTION | 43 |
| XVI. | MODIFICATION | 44 |
| XVII. | TERMINATION | 44 |
| XVIII. | PUBLIC PARTICIPATION | 45 |
| XIX. | SIGNATORIES/SERVICE | 46 |
| XX. | INTEGRATION | 46 |
| XXI. | FINAL JUDGMENT | 47 |
| XXII. | APPENDICES | 47 |

## I.    INTRODUCTION

A.    Concurrent with the lodging of this Consent Decree, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA") and the Pennsylvania Department of Environmental Protection ("PADEP") have filed a Complaint against Defendants CONSOL Energy Inc., CNX Coal Resources LP, and Consol Pennsylvania Coal Company LLC.

B.    The Complaint alleges that Defendants violated Sections 301 and 402 of the Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977 and the Water Quality Act of 1987 ("CWA" or the "Act"), 33 U.S.C. §§ 1311 and 1342; and Sections 301, 307, 315, and 601 of the Pennsylvania Clean Streams Law ("PCSL"), 35 P.S. §§ 691.301, 691.307, 691.315, and 691.601. Specifically, the Complaint alleges that Defendants violated Section 301 of the Act and 35 P.S. §§ 691.301, 691.307, and 691.315 by discharging pollutants in violation of the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued to Consol Pennsylvania Coal Company LLC pursuant to Section 402 of the Act, 33 U.S.C. § 1342, and Sections 301, 307, and 315 of the PCSL, 35 P.S. §§ 691.301, 691.307, and 691.315.

C.    Defendants do not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint, nor do Defendants admit the factual allegations alleged in the Complaint.

D.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1

## II.    JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Parties and over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

2.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the judicial district in which Defendants are located, reside, and/or are doing business, and in which the violations alleged in the Complaint occurred.

3.     For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and consent to venue in this judicial district.

4.     For purposes of this Decree, Defendants agree that the United States' Complaint states claims upon which relief may be granted pursuant to Sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342, and Sections 301, 307, 315, and 601 of the Pennsylvania Clean Streams Law 35 P.S. §§ 691.301, 691.307, 601.315, and 691.601.

## III.    APPLICABILITY

5.     The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

6.     At least 30 Days prior to any transfer of ownership or operation of any facility with wastewater streams covered by this Decree, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice ·of the prospective transfer, together with a copy of the proposed written transfer agreement, to the United

2

States and the State, in accordance with Section XIV (Notices) of this Consent Decree. No transfer of ownership or operation of any such facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented, unless: (a) the transferee agrees to undertake the obligations required by the Consent Decree and to be added as a Party under the Decree and thus bound as a Defendant by the terms thereof, (b) the United States and the State consent to relieve Defendants of their obligations, and (c) the transferee becomes a Party to this Consent Decree with respect to the transferred facility, pursuant to Section XVI (Modification). Any attempt to transfer ownership or operation of the facility without complying with this Paragraph constitutes a violation of this Decree.

7.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.   **DEFINITIONS**

9.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are

3

used in this Consent Decree, the following definitions shall apply:

a. "Annual Storage Report" shall mean the report submitted on an annual basis that meets the requirements of Paragraph 29 and includes, among other information, an identification of physical and operational water handling changes and an updated Bailey Mine Complex Operations Map.

b. "Advanced Treatment Plan" shall mean the plan for achieving compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits, through permanent treatment measures, which meets the requirements of Paragraphs 33-35 and has been approved by EPA, in consultation with the State.

c. "Bailey Mine Complex" shall mean all mining operations and processes, including refuse disposal processes, associated with the Bailey, Enlow Fork, and Harvey Mines in Greene and Washington Counties, Pennsylvania.

d. "Bailey Mine Complex Operations Map" shall mean the operations map for the Bailey Mine Complex submitted by Defendants and approved by EPA, in consultation with the State, which shall be updated annually pursuant to Paragraph 29(c) of this Decree.

e. "Bailey Coal Refuse Disposal Facilities" shall mean: (i) the coal refuse disposal facilities associated with Coal Refuse Disposal Permit No. 30020701, NPDES Permit No. PA0235482, Outfall 301, and Coal Refuse Disposal Permit No. 30080701, NPDES Permit No. PA0235806, Outfalls 501 and 601, and any wastewater discharges therefrom; (ii) any future coal refuse disposal facilities and associated NPDES permitted outfalls at the Bailey Mine Complex; and (iii) any location in the Bailey Mine Complex which receives wastewater from the coal refuse disposal facilities identified in (i) and (ii).

4

f.      "Coal Refuse Disposal Area No. 3/4" or "CRDA No. 3/4" shall mean the Bailey Mine Complex CRDA Nos. 3 and 4 that are permitted under Coal Refuse Disposal Permit No. 30020701, NPDES Permit No. PA0235482.

g.      "Coal Refuse Disposal Area No. 5" or "CRDA No. 5" shall mean the Bailey Mine Complex CRDA No. 5 that is permitted under Coal Refuse Disposal Permit No. 30080701, NPDES Permit No. PA0235806.

h.      "Coal Refuse Disposal Area No. 6" or "CRDA No. 6" shall mean the Bailey Mine Complex CRDA No. 6 that is permitted under Coal Refuse Disposal Permit No. 30080701, NPDES Permit No. PA0235806.

i.      "Coal Refuse Disposal Area No. 7" or "CRDA No. 7" shall mean the Bailey Mine Complex CRDA No. 7 that is proposed to be permitted under a Coal Refuse Disposal Permit and an NPDES Permit.

j.      "Coal Refuse Disposal Area No. 8" or "CRDA No. 8" shall mean the Bailey Mine Complex CRDA No. 8 that is proposed to be permitted under a Coal Refuse Disposal Permit and an NPDES Permit.

k.      "Complaint" shall mean the complaint filed by the United States and the State in this action.

l.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXII).

m.      "Coon Run Diffuser System" shall mean the water management system for discharging treated mine water from the Bailey Deep Mine to the Ohio River via a multiport diffuser at NPDES Permit No. WV1017497, Outlet 006, which meets the requirements of

5

Paragraph 27(c).

n.      "CRDA No. 3/4 Pump Back System" shall mean a system meeting the specifications of Appendix A that is installed at CRDA No. 3/4 for pumping flow from drains and Sediment Pond No. 12 to the CRDA No. 3 fine coal refuse impoundment, in order to manage discharges from NPDES Permit No. PA0235482, Outfall 301.

o.      "CRDA No. 5 Pump Back System" shall mean a system meeting the specifications of Appendix B that is installed at CRDA No. 5 for pumping flow from drains and Sediment Pond No. 13 to the CRDA No. 5 fine coal refuse impoundment, in order to manage discharges from NPDES Permit No. PA0235806, Outfall 501 and SP-01.

p.      "CRDA No. 6 Pump Back System" shall mean a system meeting the specifications of Appendix C that is installed at CRDA No. 6 for pumping flow from drains and from Sediment Pond No. 14 to the CRDA No. 5 fine coal refuse impoundment, in order to manage discharges from NPDES Permit No. PA0235806, Outfall 601.

q.      "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

r.      "Defendants" shall mean CONSOL Energy Inc., CNX Coal Resources LP, and Consol Pennsylvania Coal Company LLC.

s.      "Discharge Monitoring Report Sample" or "DMR Sample" shall mean a sample taken in accordance with applicable NPDES permit conditions.

t.      "EPA" shall mean the United States Environmental Protection Agency and

6

any of its successor departments or agencies.

u. "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

v. "Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.

w. "Managed Discharge" shall mean a discharge from a Managed Discharge System.

x. "Managed Discharge System" shall mean a system meeting the requirements of Paragraph 27(b), which controls discharges using continuous real-time monitoring data on specific conductance levels and other relevant sampling data in order to ensure compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits.

y. "NPDES Permit" shall mean a National Pollutant Discharge Elimination System permit as defined in 40 C.F.R. § 122.2 and any State-issued NPDES permit.

z. "Osmotic Pressure Limits" shall mean any instantaneous maximum, maximum daily, and/or monthly average discharge limitation for osmotic pressure set forth in NPDES Permit Nos. PA0235482 and PA0235806, and in any other NPDES Permit applicable to any discharge from a treatment system, including systems implemented pursuant to the Short Term Treatment Plan or the Advanced Treatment Plan.

aa. "Outfall" or "Outlet" shall mean an NPDES permitted discharge point.

bb. "PADEP" shall mean the Pennsylvania Department of Environmental Protection and any of its successor departments or agencies.

cc. "Paragraph" shall mean a portion of this Decree identified by an Arabic

7

numeral.

dd.     "Parties" shall mean the United States, the State, and Defendants.

ee.     "Quarterly Storage Report" shall mean the report meeting the requirements

of Paragraph 28, which contains operational data and evaluates available water storage volume,

available fine coal refuse impoundment storage capacity, available coarse coal refuse storage

capacity, available mine pool storage capacity, and estimated time of exhaustion of fine coal refuse

impoundment and mine pool storage capacity at the Bailey Mine Complex.

ff.     "Section" shall mean a portion of this Decree identified by a roman

numeral.

gg.     "Short Term Treatment Plan" shall mean the plan for achieving

compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits, on a short

term basis, which plan meets the requirements of Paragraph 43 and has been approved by EPA, in

consultation with the State.

hh.     "State" shall mean the Commonwealth of Pennsylvania, Department of

Environmental Protection.

ii.     "Treatment Plan Trigger" shall mean the determination under Paragraph

31 or Paragraph 32 that an Advanced Treatment Plan is required because there is either (1) less

than four years of fine coal refuse impoundment storage capacity, or (2) less than one year of total

mine pool storage capacity at the Bailey Mine Complex.

jj.     "United States" shall mean the United States of America, acting on behalf

of EPA.

8

## V.    **CIVIL PENALTY**

10.    Defendants shall pay the sum of $3 million as a civil penalty to the United States and the State, as provided in this Section.

11.    Defendants shall make payment of the civil penalty in three installments. The first payment of $1 million is due within 30 Days after the Effective Date. The second payment of $1 million is due within 150 Days after the Effective Date. The third payment of $1 million is due no later than January 15, 2018. The first payment, if timely paid, shall include no Interest. The second and third payments shall include an additional sum for Interest accrued on the unpaid portion of the civil penalty calculated from the date of the prior payment until the date of the second or third payment, as applicable.

12.    If Defendants fail to make any payment required by Paragraph 11 by the required due date, all remaining installment payments and all accrued Interest shall become due immediately upon such failure. If the first payment is not timely made, Interest shall accrue from the Effective Date. Interest shall continue to accrue on any unpaid amounts until the total amount due has been received. Interest required by this Paragraph shall be in addition to any stipulated penalties owed pursuant to Paragraph 61.

13.    The Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Western District of Pennsylvania shall send a calculation of the Interest due for each payment to Defendants prior to the payment due date. Defendants may pay any installment payment prior to the due date, but must contact the FLU in advance for a determination regarding the amount of Interest to be included with the payment. In the event any installment payment includes an overpayment, the amount for the overpayment shall be applied to the remaining principal.

9

14.     Fifty percent of each payment pursuant to Paragraph 11 shall be paid to the United States and fifty percent shall be paid to the State.

15.     Defendants shall make payment to the United States at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the FLU after the Effective Date. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

Andrew Thompson
CONSOL Energy Inc.
1000 CONSOL Energy Drive
Canonsburg, PA 15317-6506
(724) 485-4338
AndrewThompson@consolenergy.com

on behalf of Defendants. Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States in accordance with Section XIV of this Decree (Notices). At the time of payment, Defendants shall send notice that payment has been made to: (a) EPA via email at acctsreceivable.CINWD@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268; and (b) the United States via email or regular mail in accordance with Section XIV. Such notice shall reference the CDCS Number and DOJ case number: 90-5-1-1-10614.

16.     Defendants shall make payment to the State under this Section by certified or cashier's check to the Commonwealth of Pennsylvania and mailed to:

Deputy Secretary
Active and Abandoned Mining Operations
Pa. Department of Environmental Protection

10

Rachel Carson State Office Building
400 Market Street, 16th Floor
Harrisburg, PA 17101

17.     Defendants shall not deduct any penalties paid under this Decree pursuant to this

Section or Section VIII (Stipulated Penalties) in calculating its federal or state or local income tax.

## VI.     COMPLIANCE REQUIREMENTS

### General Requirements

18.     This Consent Decree in no way affects or relieves Defendants of their

responsibility to comply with applicable federal, state, and local laws, regulations, and permits,

including, but not limited to, applicable requirements under the CWA and PCSL; the Surface

Mining Control and Reclamation Act and the Pennsylvania Surface Mining Conservation and

Reclamation Act; the Federal Mine Safety and Health Act; the Pennsylvania Dam Safety and

Encroachments Act, Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§ 693.1-693.27;

and the Coal Refuse Disposal Control Act, the Act of September 24, 1968, P.L. 1040, *as amended*,

52 P.S. §§ 30.51-30.66.

19.     Defendants shall operate the mining facilities associated with the Bailey Mine

Complex to ensure compliance with applicable NPDES Permits.

20.     Defendants shall perform the work required by this Consent Decree in compliance

with the requirements of all applicable federal, state, and local laws, regulations, and permits. This

Consent Decree should not be considered to be a permit issued pursuant to any federal, state, or

local statute or regulation.

21.     Approval of Deliverables. After review of any plan, report, or other item that is

required to be submitted and approved pursuant to this Consent Decree, EPA, after consultation

11

with the State, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

22.     If the submission is approved pursuant to Paragraph 21(a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 21(b) or 21(c), Defendants shall, upon written direction from EPA, after consultation with the State, take all actions required by the approved portion of such plan, report, or other item that EPA, after consultation with the State, determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions under Section X of this Decree (Dispute Resolution).

23.     If the submission is disapproved in whole or in part pursuant to Paragraph 21(c) or (d), Defendants shall, within 45 Days of receipt of disapproval or at such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

24.     Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree (Stipulated Penalties), shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material

12

breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

25.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the State, may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendants' right to invoke Dispute Resolution under Section X and the right of EPA to seek stipulated penalties as provided in the preceding Paragraph.

26.    Permits.  Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## Compliance Plan

27.    Defendants shall implement the following compliance measures to prevent discharge of pollutants in excess of applicable NPDES Permit limits at the Bailey Coal Refuse Disposal Facilities:

      a.    Pump Back Systems:

        (i)    *CRDA No. 3/4 Pump Back System.*  Defendants shall operate the CRDA No. 3/4 Pump Back System as necessary to maintain compliance with applicable NPDES

13

Permit limits, including Osmotic Pressure Limits.

(ii)     *CRDA No. 5 Pump Back System.*  Defendants shall operate the CRDA No. 5 Pump Back System as necessary to maintain compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits.  No discharge shall occur from SP-01 unless authorized by and in compliance with a NPDES Permit.

(iii)     *CRDA No. 6 Pump Back System.*  Defendants shall operate the CRDA No. 6 Pump Back System as necessary to maintain compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits.

b.     Managed Discharge Systems.

(i)     Upon commencing operation of an applicable Pump Back System pursuant to Paragraph 27(a), Defendants shall not discharge from the Bailey Coal Refuse Disposal Facilities except pursuant to a Managed Discharge System that controls discharges from the applicable sediment ponds in order to maintain compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits, and other NPDES permit conditions.

(ii)     In addition to the continuous monitoring requirements associated with a Managed Discharge System, prior to any Managed Discharge Defendants shall sample the real time monitoring point for all applicable pollutant discharge parameters to ensure that the discharge is capable of achieving compliance with NPDES Permit limits.  Defendants shall also take a DMR Sample for all applicable pollutant discharge parameters at the applicable Outfall within 12 hours of beginning a Managed Discharge, and every 24 hours thereafter until the Managed Discharge has ended.  Defendants shall take at least one DMR Sample during any Managed Discharge, regardless of the duration of the discharge.

14

c.        Coon Run Diffuser System. Defendants have designed, constructed, and intend to operate the Coon Run Diffuser System for discharging treated mine water from the Bailey Deep Mine to the Ohio River via a multiport diffuser. Discharges from the system are authorized by and shall be in compliance with NPDES Permit No. WV1017497, Outlet 006.

**Water Storage Evaluation**

28.        Quarterly Storage Report. Beginning with the first full calendar quarter after lodging of the Consent Decree, and continuing quarterly thereafter (i.e., by April 30, July 31, October 31, and January 31), Defendants shall certify and submit a water storage report containing the following information:

a.        Operational Data Submittals. The Quarterly Storage Report shall contain the following certified operational information and any applicable underlying supportive data relating to the Bailey Mine Complex to the United States and the State:

(i)        Clean coal production during the quarter (in tons);

(ii)        Cubic yards of coarse coal refuse produced during the quarter;

(iii)        Monthly water quality monitoring data for Ponds 12, 13 and 14 when discharging;

(iv)        Pump back volume for all CRDAs during the quarter;

(v)        Pump volumes from the mine pool to each CRDA, the AMD Plant, and any other location during the quarter;

(vi)        Pump back volume from the CRDA 5 fine coal refuse impoundment underdrain SP-01 during the quarter;

(vii)        Water inflow rate to the mine pool during the quarter;

15

(viii)   Available fine coal refuse impoundment and coarse coal refuse storage capacity for all active CRDAs at the end of the reporting period; and

(ix)   Available mine pool storage capacity and the elevation of each mine pool at the end of the reporting period.

b.   Water Storage Evaluation.   The Quarterly Storage Report shall include an evaluation of the remaining available storage capacity within constructed fine coal refuse impoundments, the remaining available storage capacity within each mine pool, and the remaining available coarse coal refuse storage capacity, and shall estimate the time when available storage capacities will be exhausted in the Bailey Mine Complex.   The water storage evaluation shall be determined as follows:

(i)   The evaluation shall be conducted using the preceding 12 months of operational information and underlying supportive data, including the certified quarterly operational data listed in Paragraph 28(a).

(ii)   Available storage capacity within constructed fine coal refuse impoundments shall be calculated based on the difference between the measured fine coal refuse impoundment pools and the maximum available pool elevations, using established impoundment stage storage curves or other calculation methods approved in writing by the United States and the State.

(iii)   Maximum available pool elevations shall be calculated based on the elevation as it relates to the active decant specified in the permit, less storage volumes required to contain 10-year, 24-hour design storms.   In order for reported maximum available pool

16

elevations to be acceptable, the following criteria must be met:

(1)     Impoundment liner installation shall be completed to the specified elevation as it relates to the active decant specified in the permit; and

(2)     Corresponding minimum required embankment crest elevations shall be achieved in accordance with the approved permits.

(iv)     Available mine pool storage capacity shall be calculated based on the Mine Safety and Health Administration-approved maximum mine pool elevation combined with the current pool elevation.

(v)     Available coarse coal refuse storage capacity shall be calculated for each coarse coal refuse area as the total quantity of coal refuse that can be placed in each area, less the quantity actually placed through the end of the reporting period, based on the most recent topographic survey.

(vi)     Estimated time to fine coal refuse impoundment and mine pool storage exhaustion shall be reported in months, and shall be determined by dividing the remaining storage capacity by the 12 month rolling average storage capacity depletion rate for the reporting quarter. For the purposes of this Subparagraph, "12 month rolling average" shall mean the sum of the change in available storage capacity from one month to the next, over the current 12 month period, divided by the total number of months (12).

c.     Advanced Treatment Plan Trigger. The Quarterly Storage Report shall include an explanation and determination on whether, pursuant to Paragraph 31, the requirement to develop and/or implement an Advanced Treatment Plan has been triggered.

d.     Advanced Treatment Plan Suspension.     If an approved Advanced

17

Treatment Plan has been suspended pursuant to Paragraph 38, the Quarterly Storage Report shall include an updated evaluation of whether Defendants have the capability of avoiding discharge from the Bailey Coal Refuse Disposal Facilities that is not a Managed Discharge for a period of no less than 3 years from the date of the Quarterly Storage Report.

29.    Annual Storage Report.  Beginning with the first Quarterly Storage Report and annually thereafter, Defendants shall submit an Annual Storage Report which, in addition to the Quarterly Storage Report, shall:

a.    identify any physical and operational water handling changes that have occurred over the preceding four quarters and whether these changes have resulted in a change in the available fine coal refuse impoundment or mine pool storage;

b.    identify any future planned physical and operational water handling changes that could result in a change in the available fine coal refuse impoundment or mine pool storage; and

c.    provide an updated Bailey Mine Complex Operations Map.

30.    Defendants shall submit the Quarterly Storage Report and, when applicable, the Annual Storage Report with the quarterly report required by Paragraph 48.  Defendants shall continue to submit Quarterly Storage Reports, Annual Storage Reports, and quarterly reports under Paragraph 48 until termination of the Consent Decree pursuant to Section XVII (Termination).

**Advanced Treatment Plan**

31.    If the Quarterly Storage Report indicates there is (1) less than four years of fine coal refuse impoundment storage capacity, or (2) less than one year of total mine pool storage capacity at the Bailey Mine Complex (collectively, "Treatment Plan Trigger"), then Defendants

18

shall, within 30 Days of the applicable quarterly submittal ("Trigger Date"), submit an Advanced Treatment Plan to the United States and the State for review and approval by EPA, after consultation with the State.

32.     EPA, after consultation with the State and subject to the meet-and-confer provisions in this Paragraph, may also require Defendants to develop and submit an Advanced Treatment Plan if it determines that a Treatment Plan Trigger has been met. In making this determination, EPA and the State may consider all relevant data, including the Quarterly Storage Reports, the Annual Storage Reports, DMRs for the Outfalls associated with the Bailey Coal Refuse Disposal Facilities, and any monitoring or sampling data collected pursuant to this Consent Decree. EPA shall provide written notification to Defendants of its determination that a Treatment Plan Trigger has been met. Following receipt by Defendants, the Parties shall confer informally about EPA's determination. Unless the Parties agree to otherwise in writing, within 30 Days of receipt of EPA's determination under this Paragraph, Defendants shall submit an Advanced Treatment Plan to the United States and the State for review and approval by EPA, after consultation with the State.

33.     The Advanced Treatment Plan shall include a plan for long-term treatment of water from the Bailey Coal Refuse Disposal Facilities prior to discharge in order to ensure continuous compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits, with supporting documentation. The proposed treatment system must be sized to accept a volume of flow that is reasonably anticipated based on historical flow rates to ensure continuous compliance with applicable NPDES Permit limits, including Osmotic Pressure Limits. The Advanced Treatment Plan shall also include a Short Term Treatment Plan when required pursuant

to Paragraph 40.

34.     The Advanced Treatment Plan must include the following for each proposed treatment system that will discharge pursuant to an NPDES Permit:

        a.      Narrative description of the proposed treatment system;

        b.      A showing that the technology has proven success at full-scale operation to meet the applicable NPDES Permit limits, including Osmotic Pressure Limits;

        c.      A report that assures the appropriateness of the treatment system given site-specific water quality;

        d.      Preliminary estimate of size and footprint of the treatment system;

        e.      Nominal design flow and operating range;

        f.      Detailed schedule for design and implementation; and

        g.      Schedule for sampling of specific conductance in treatment system influent and effluent. The proposed schedule shall provide for sampling to commence with the operation of the treatment system and continue 30 Days thereafter.

35.     The schedule in the proposed Advanced Treatment Plan shall include the following:

        a.      A deadline for submission of all necessary permit applications for implementation of the Advanced Treatment Plan;

        b.      A deadline for commencement of construction of the applicable treatment system; and

        c.      A deadline for commencing operation of the applicable treatment system within 3 years after either (i) the Trigger Date pursuant to Paragraph 31, or (ii) receiving written

20

notification pursuant to Paragraph 32 that a Treatment Plan Trigger has been met, whichever is applicable.

36.     After approval of the Advanced Treatment Plan, Defendants may submit a request to the United States and the State to revise or suspend the approved Advanced Treatment Plan based on changed circumstances, including: changes to fine coal refuse impoundment or mine pool storage capacity predictions, mine plans, transfers to the mine pool, or construction or operation of the refuse facilities; the need for or operation of a short term treatment system; new or improved technology; water re-use; water sale or transfer for use by a third-party; and/or other agreed sustainable measures.

37.     The request shall be submitted for review and approval by EPA, after consultation with the State.  The request must include, with supporting documentation: (a) the reason(s) for the proposed revisions; (b) a demonstration that the proposed revisions meet the requirements for the Advanced Treatment Plan in Paragraphs 33-35 if applicable; and (c) justification for suspension of the Advanced Treatment Plan, if applicable.  Regardless of whether a request for revision or suspension is pending, Defendants shall implement the approved Advanced Treatment Plan as required and in accordance with the schedule established therein unless and until EPA approves the revisions or suspension to the Advanced Treatment Plan.

38.     If, in a request for suspension submitted pursuant to Paragraphs 36-37, Defendants demonstrate that they have the capability of avoiding discharge from the Bailey Coal Refuse Disposal Facilities that is not a Managed Discharge (other than a discharge from the Coon Run Diffuser System) for a period of no less than 3 years, then implementation of the Advanced Treatment Plan shall be suspended.  Upon suspension of the Plan pursuant to this Paragraph,

21

Defendants shall include an updated evaluation of their capability of avoiding discharge in each subsequent Quarterly Storage Report as required by Paragraph 28(d). If Defendants can no longer demonstrate their ability to meet the standard in this Paragraph, suspension of the Advanced Treatment Plan will be lifted and implementation shall continue in accordance with the approved Plan.

39.     Implementation of the Advanced Treatment Plan shall be completed in the manner and in accordance with the schedule established in the Advanced Treatment Plan as approved by EPA. The approved Advanced Treatment Plan shall be deemed incorporated into this Consent Decree.

### Short Term Treatment Plan

40.     If, at any point in time, Defendants determine that a discharge from the Bailey Coal Refuse Disposal Facilities that is not a Managed Discharge will occur before the Advanced Treatment Plan is fully implemented, then the Advanced Treatment Plan must include a Short Term Treatment Plan meeting the requirements of Paragraph 43. Based on the timing of such determination, Defendants shall either (a) submit a Short Term Treatment Plan for approval along with the initial Advanced Treatment Plan developed pursuant to Paragraphs 31-35, or (b) revise its Advanced Treatment Plan to include a Short Term Treatment Plan, and submit such revisions to the United States and the State for approval by EPA, after consultation with the State about the revisions.

41.     If any discharge occurs from the Bailey Coal Refuse Disposal Facilities prior to implementation of a Short Term Treatment Plan that (a) is not a Managed Discharge, and (b) is not the direct result of a pipe failure or similar equipment failure, Defendants shall immediately

22

notify the United States and the State by email.  Such notice shall include the reasons for the discharge, the estimated amount of discharge, and the estimated length in time that discharge will continue.  If such discharge occurs prior to submittal of a Short Term Treatment Plan pursuant to Paragraph 40, Defendants shall immediately develop and submit a Short Term Treatment Plan meeting the requirements of Paragraph 43 to the United States and the State for approval by EPA, after consultation with the State.

42.     Where a discharge occurs from the Bailey Coal Refuse Disposal Facilities that is not a Managed Discharge and is a direct result of a pipe failure or similar equipment failure, Defendants shall promptly repair or replace the failed equipment as necessary to terminate such discharge and no Short Term Treatment Plan shall be required.

43.     The proposed Short Term Treatment Plan shall set forth a plan for achieving compliance with the NPDES Permit(s) applicable to discharges from the Bailey Coal Refuse Disposal Facilities until permanent measures for ensuring compliance are in place pursuant to the Advanced Treatment Plan. The Short Term Treatment Plan shall contain a schedule for permitting, procuring, installing, and commencing operation of an active water treatment system or other technology sufficient to achieve compliance with the applicable NPDES Permit(s) in the event of any discharge from the Bailey Coal Refuse Disposal Facilities that is not a Managed Discharge. The Short Term Treatment Plan must include a showing that the chosen technology has proven success at full-scale operation to meet the applicable NPDES Permit limits, including Osmotic Pressure Limits.

44.     Implementation of the Short Term Treatment Plan shall be completed in the manner and in accordance with a schedule established in the Short Term Treatment Plan and

approved by EPA. The approved Short Term Treatment Plan shall be deemed incorporated into this Consent Decree.

45.     After the Short Term Treatment Plan is initially approved by EPA, Defendants may submit a request to the United States and the State to revise the Short Term Treatment Plan to incorporate alternative treatment technology. The request shall be submitted for review and approval by EPA, after consultation with the State. The request must include, with supporting documentation: (a) a showing that the technology has proven success at full-scale operation to meet the applicable NPDES Permit limits, including Osmotic Pressure Limits; and (b) analysis of the reasons for selecting this technology over the previously approved available technology. Regardless of whether a request for revision is pending, Defendants shall implement the approved Short Term Treatment Plan as required and in accordance with the schedule established therein unless and until EPA approves the revisions to the Short Term Treatment Plan.

46.     Should any discharge, other than a Managed Discharge, occur from the Bailey Coal Refuse Disposal Facilities prior to treatment of that discharge pursuant to the Short Term Treatment Plan, Defendants shall immediately cease pumping from the mine pool to the applicable coal refuse disposal area in the Bailey Mine Complex. In addition, Defendants shall commence daily DMR Sampling at the discharging Outfall to determine compliance with applicable NPDES Permit limits. Defendants shall not recommence pumping from the mine pool and shall continue daily DMR Sampling until compliance with applicable NPDES Permit limits has been achieved pursuant to the Short Term Treatment Plan.

## Environmental Management System

47.     Within 30 Days of the Effective Date, Defendants shall submit to the United States

24

and the State for review and approval an ISO 14001-compliant Environmental Management System ("EMS") for operations at the Bailey Mine Complex that outlines its management plan for compliance with the CWA, PCSL, and other applicable laws and regulations. The EMS shall include protocols for: (a) regular outfall inspections and treatment system audits; (b) electronic documentation of audit results and violations of applicable laws, including efforts to resolve any violations or areas of concern; (c) treatment of noncompliant discharges; (d) ensuring sufficient personnel to meet Consent Decree, CWA, and PCSL requirements; (e) emergency response procedure for major power failures, pump back failures, slurry pipeline failures, and failures at the Coon Run Diffuser System; and (f) training on relevant environmental subject matters for employees and contractors with responsibilities under this Consent Decree or other environmental responsibilities.

## VII.    REPORTING REQUIREMENTS

48.    Defendants shall submit quarterly reports at the end of the month following the end of each calendar-year quarter (*i.e.*, by April 30, July 31, October 31, and January 31). The quarterly reports shall contain, at a minimum, the following:

a.    A discussion of progress since the last quarterly report on the implementation of compliance measures required in Paragraph 27;

b.    A discussion of progress since the last quarterly report on the implementation of the Short Term Treatment Plan and the Advanced Treatment Plan, as applicable;

c.    All sampling data collected pursuant to Paragraphs 27(b)(ii), 34, 43, and 46;

25

d.        Summary of information relating to each exceedance of NPDES Permit limits applicable to the Bailey Mine Complex, including (i) NPDES Permit number and Outfall, (ii) date, (iii) applicable stipulated penalties, and (iv) steps taken or planned steps to remedy the exceedance;

e.        Information on completed or missed Consent Decree deadlines, the reasons for any missed deadlines, and any anticipated problems meeting any deadlines in the following quarter;

f.        A description of any other noncompliance with the requirements of this Consent Decree and an explanation of the violation's likely cause(s) and the remedial steps taken, or to be taken, to prevent or minimize such violation; and

g.        A description of each Decree violation for which Defendants have submitted to EPA an unresolved Force Majeure claim or intend to submit a Force Majeure claim pursuant to Section IX of this Consent Decree.

49.        If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify the United States and the State of such violation and its likely duration, in writing, within seven Days of the day Defendants first become aware of the violation, with an explanation to the extent then known of the violation's likely cause(s) and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the day Defendants become aware of the cause of the violation. Nothing in this Paragraph or

26

the following Paragraph relieves Defendants of their obligation to provide the notice required by

Section IX of this Consent Decree (Force Majeure).

50. Whenever any violation of this Consent Decree or of any applicable permit or any

other event affecting Defendants' performance under this Decree may pose an immediate threat to

the public health or welfare or the environment, Defendants shall notify EPA and the State orally

or by email as soon as possible, but no later than 24 hours after Defendants first knew of the

violation or event. This procedure is in addition to the requirements set forth in the preceding

Paragraph.

51. All reports shall be submitted to the persons designated in Section XIV of this

Consent Decree (Notices).

52. Each report submitted by Defendants under this Section shall be signed by an

official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared
> under my direction or supervision in accordance with a system designed to assure
> that qualified personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the system, or those
> persons directly responsible for gathering the information, the information
> submitted is, to the best of my knowledge and belief, true, accurate, and complete.
> I am aware that there are significant penalties for submitting false information
> under 18 Pa. C.S. § 4904 and other applicable state and federal statutes, including
> the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

53. The reporting requirements of this Consent Decree do not relieve Defendants of

any reporting obligation required by the Act or implementing regulations, or by any other federal,

state, or local law, regulation, permit, or other requirement.

54.     Any information provided pursuant to this Consent Decree may be used by the

United States or the State in any proceeding to enforce the provisions of this Consent Decree and

as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

55.     Defendants shall be liable for stipulated penalties to the United States and the State

for violations as specified below, unless excused under Section IX (Force Majeure). A violation

includes failing to perform any obligation required by the terms of this Decree, including any work

plan or schedule approved under this Decree, according to all applicable requirements of this

Decree and within the specified time schedules established by or approved under this Decree.

56.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive

stipulated penalties otherwise due it under this Consent Decree.

57.     Stipulated penalties under Paragraphs 61 and 62 shall begin to accrue on the Day

after performance is due or on the Day a violation occurs, whichever is applicable, and shall

continue to accrue until performance is satisfactorily completed or the violation ceases. Stipulated

penalties shall accrue simultaneously for separate violations of this Consent Decree.

58.     Stipulated penalties shall continue to accrue as provided in this Section during any

Dispute Resolution under Section X, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA or the State

that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing,

together with Interest, to the United States and the State within 30 Days of the effective date of the

agreement or the receipt of EPA's or the State's decision or order.

b.     If the dispute is appealed to the Court and the United States or the State

28

prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with Interest, to the United States and the State within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph (c), below.

        c.      If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

      59.      If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for Interest on such penalties accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

      60.      Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Defendants' violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

      61.      <u>Noncompliance with Consent Decree Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of any requirement of this Consent Decree, if the violation is not otherwise subject to stipulated penalties under this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 per Day or portion thereof | 1st through 14th Day |

29

$2,500 per Day or portion thereof      15th through 30th Day
$4,500 per Day or portion thereof      31st Day and beyond

62.    Noncompliance with Reporting Requirements. The following stipulated penalties

shall accrue per violation per Day for each violation of the Reporting Requirements under Section

VII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 per Day or portion thereof | 1st through 14th Day |
| $500 per Day or portion thereof | 15th through 30th Day |
| $1,250 per Day or portion thereof | 31st Day and beyond |

63.    Defendants shall pay any stipulated penalty pursuant to Paragraphs 61 and 62 to

the United States and the State within 30 Days of receiving a written demand by either Plaintiff.

The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a

copy of the demand to the other.

64.    Defendants shall pay 50 percent of the total stipulated penalty amount due under

Paragraphs 61 and 62 to the United States and 50 percent to the State.

65.    Noncompliance with Osmotic Pressure Limits. The following stipulated penalties

shall accrue for each violation of an Osmotic Pressure Limit, except as otherwise provided by

Subparagraph c:

a.    For violations of a daily maximum or instantaneous maximum Osmotic

Pressure Limit:

| Number of daily maximum or instantaneous maximum violations at an Outfall | Stipulated Penalties |
|---|---|
| First violation | $5,000 |
| Second consecutive violation | $10,000 |
| Third consecutive violation | $20,000 |
| Fourth consecutive violation and each consecutive violation thereafter | $30,000 |

30

b.   For violations of a monthly average Osmotic Pressure Limit:

| Number of monthly average violations at an Outfall | Stipulated Penalties |
|---|---|
| First violation | $10,000 |
| Second consecutive violation | $20,000 |
| Third consecutive violation | $40,000 |
| Fourth consecutive violation and each<br>    consecutive violation thereafter | $60,000 |

c.   Stipulated penalties for violations of Osmotic Pressure Limits that are the

direct result of a pipe failure or similar equipment failure subject to the requirements of

Paragraph 42 shall accrue as set forth in Paragraph 66(a) and (b).

66.   Noncompliance with Other Effluent Limits.   The following stipulated penalties

shall accrue for each violation of an NPDES Permit limit applicable to discharges from the Bailey

Mine Complex, other than an Osmotic Pressure Limit:

a.   For violations of a daily maximum or instantaneous maximum effluent

limit:

| Number of daily maximum or instantaneous maximum<br>violations at an Outfall | Stipulated Penalties |
|---|---|
| First violation | $1,000 |
| Second consecutive violation | $2,500 |
| Third consecutive violation | $5,000 |
| Fourth consecutive violation and each<br>    consecutive violation thereafter | $10,000 |

b.   For violations of a monthly average effluent limit:

| Number of monthly average violations at an Outfall | Stipulated Penalties |
|---|---|
| First violation | $2,000 |
| Second consecutive violation | $5,000 |
| Third consecutive violation | $10,000 |
| Fourth consecutive violation and each<br>    consecutive violation thereafter | $20,000 |

67.   Defendants shall pay any stipulated penalties due under Paragraphs 65-66 at the

31

end of the month following the end of each quarter (i.e., by April 30, July 31, October 31, and January 31).

68.     Defendants shall pay 50 percent of stipulated penalties due under Paragraphs 65-66 to the United States and 50 percent of stipulated penalties to the State, unless a violation under Paragraph 66 occurred in West Virginia, in which case Defendants shall pay 50 percent of stipulated penalties to the United States and 50 percent to West Virginia.

69.     Defendants shall pay stipulated penalties owing to the United States pursuant to this Section in the manner set forth and with the confirmation notices required by Paragraph 15, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

70.     Defendants shall pay stipulated penalties owing to the State pursuant to this Section in the manner set forth and with the confirmation notice required by Paragraph 16, except that the notice shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

71.     Defendants shall pay stipulated penalties owing to West Virginia pursuant to this Section by certified or cashier's check to the West Virginia Department of Environmental Protection.  Payment shall be mailed to:

> John T. Vernon, Assistant Deputy Director
> Inspection and Enforcement
> Division of Mining and Reclamation
> West Virginia Department of Environmental Protection
> 601 57th Street, SE
> Charleston, WV 25304

All payments made to West Virginia under this Consent Decree shall be deposited in the Mining and Reclamation Operations Fund.

## IX.    FORCE MAJEURE

72.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

73.    If any event occurs or has occurred that may delay or prevent the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by email transmission to EPA and the State within 72 hours of when Defendants first knew that the event might cause a delay.  Within 7 Days thereafter, Defendants shall provide in writing to the United States and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to

33

comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

74.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

75.     If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

76.     If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

34

that Defendants complied with the requirements of Paragraphs 72 and 73, above. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.    **DISPUTE RESOLUTION**

77.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendants arising under this Decree.

78.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State, shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

79.    Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion

supporting Defendants' position and any supporting documentation relied upon by Defendants.

80.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States, and shall be developed in consultation with the State. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

81.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

82.    The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

83.    Standard of Review

a.    Disputes Concerning Matters Accorded Record Review.    Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 78 pertaining

36

to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

          b.      Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 78, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

84.      The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 58. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION

85.      The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry onto any property related to this Consent Decree and under the ownership or control of Defendants, at all reasonable times, upon presentation of credentials, to:

37

      a.      monitor the progress of activities required under this Consent Decree;

      b.      verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

      c.      obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

      d.      obtain documentary evidence, including photographs and similar data; and

      e.      assess Defendants' compliance with this Consent Decree.

86.      Upon request, Defendants shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendants. Upon request, EPA and the State shall provide Defendants splits of any samples taken by EPA or the State.

87.      Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

88.      At the conclusion of the information-retention period provided in the preceding

38

Paragraph, Defendants shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendants shall deliver any such documents, records, or other information to EPA or the State. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

89.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

90.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

91.      This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action, as identified in Appendix A attached thereto.

92.      The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 91. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act and/or the PCSL and their implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 91.

93.      In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 91 of this Section.

94.      This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.   Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any

40

action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1311, *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits. Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications on the part of Defendants shall not be cause for extension of any required compliance date in this Consent Decree.

95.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

96.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any person or entity not party to this Consent Decree.

97.     By the execution of this Consent Decree, Defendants release and shall hold harmless the United States and the State, their instrumentalities, agents, and employees, in their official and personal capacities, of any and all liability or claims arising out of or otherwise related to the negotiations leading to this Consent Decree and all matters contained therein.

## XIII.  COSTS

98.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated

41

penalties due but not paid by Defendants.

## XIV.  NOTICES

99.     Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States by email:     eescasemanagement.enrd@usdoj.gov
                                   Re: DJ # 90-5-1-1-10614

                                   harsh.chad@epa.gov
                                   seligman.andrew@epa.gov

To the United States by mail:      EES Case Management Unit
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   P.O. Box 7611
                                   Washington, D.C.  20044-7611
                                   Re: DJ # 90-5-1-1-10614

                                   Director, Office of Civil Enforcement
                                   U.S. Environmental Protection Agency
                                   Ariel Rios Building, 2241A
                                   1200 Pennsylvania Ave., N.W.
                                   Washington, D.C. 20460

                                   NPDES Enforcement Branch Chief
                                   U.S. EPA Region III
                                   1650 Arch Street, 3WP42
                                   Philadelphia, PA 19103
                                   Phone: 215-814-2300
                                   Fax: 218-814-2318

To EPA by email:                   harsh.chad@epa.gov
                                   seligman.andrew@epa.gov

To EPA by mail:                    Director, Office of Civil Enforcement
                                   U.S. Environmental Protection Agency
                                   Ariel Rios Building, 2241A
                                   1200 Pennsylvania Ave., N.W.
                                   Washington, D.C. 20460

 

                                               NPDES Enforcement Branch Chief
                                                 U.S. EPA Region III
                                                 1650 Arch Street, 3WP42
                                                 Philadelphia, PA 19103
                                                 Phone: 215-814-2300
                                                 Fax: 218-814-2318

| | |
|---|---|
| To the State by email: | wikeefer@pa.gov |
| To the State by mail: | Compliance Manager |
| | Department of Environmental Protection |
| | California District Office |
| | 25 Technology Drive |
| | Coal Center, PA 15423 |
| | Phone: 724-769-1030 |
| | Fax: 724-769-1102 |
| | |
| To Defendants: | General Manager Environmental Compliance |
| | CONSOL Energy Inc. |
| | 1000 CONSOL Energy Drive |
| | Canonsburg, PA 15317 |
| | |
| | Legal Department |
| | CONSOL Energy Inc. |
| | 1000 CONSOL Energy Drive |
| | Canonsburg, PA 15317 |
| | DavidWagner@consolenergy.com |

        100.    Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

        101.    Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XV.    RETENTION OF JURISDICTION

        102.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections X (Dispute Resolution) or XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI. MODIFICATION

103. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

104. Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 83, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

105. Defendants may serve upon the United States and the State a Request for Termination after the following has occurred:

a. Defendants have maintained consistent satisfactory compliance with this Consent Decree and any NPDES Permits applicable to the Bailey Mine Complex for a period of five years;

b. If a Treatment Plan Trigger has been met, Defendants have either (i) successfully completed implementation of the Advanced Treatment Plan, or (ii) where the Advanced Treatment Plan is in suspension pursuant to Paragraphs 36-38 at the time of the Request, demonstrated that they have the capability of avoiding discharge from the Bailey Coal Refuse Disposal Facilities that is not a Managed Discharge (other than a discharge from the Coon Run

44

Diffuser System) for a period of no less than 5 years;

       c.      Defendants have completed all other applicable requirements of Section VI (Compliance Requirements); and

       d.      Defendants have paid the civil penalty and any accrued stipulated penalties and Interest as required by this Consent Decree.

    106.    The Request for Termination must include all necessary supporting documentation to demonstrate that Defendants have satisfied the requirements of Paragraph 105. The Request for Termination shall also include updated operational data and an updated water storage evaluation meeting the requirements of Paragraph 28(a) and (b).

    107.    Following receipt by the United States and the State of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

    108.    If the United States, after consultation with the State, does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X of this Decree. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

    109.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States

and the State reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

110.    Each undersigned representative of Defendants, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

111.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.   INTEGRATION

112.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement,

46

understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

113.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXII.  APPENDICES

114.    The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the design specifications for the CRDA No. 3 Pump Back System.

"Appendix B" is the design specifications for the CRDA No. 5 Pump Back System.

"Appendix C" is the design specifications for the CRDA No. 6 Pump Back System.

SO ORDERED THIS /4th DAY OF September, 2016.

United States District Judge
Western District of Pennsylvania

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et al.,*

FOR THE UNITED STATES OF AMERICA

Date: 7/28/16

JOHN CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: 7/28/16

LAURA A. THOMS, Senior Attorney
STACY D. COLEMAN, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

48

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et al.,*

FOR THE UNITED STATES OF AMERICA

DAVID J. HICKTON
United States Attorney, Western District of Pennsylvania

Date: 1 August 2016

PAUL SKIRTICH, Bar No. 30440
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Tel: 412-894-7418
Fax: 412-644-6995
Email: paul.skirtich@usdoj.gov

49

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States. et al. v. CONSOL Energy, Inc., et al.,*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: _____

CYNTHIA GILES, Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _____

SUSAN SHINKMAN, Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 7/18/16

MARK POLLINS, Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 7/13/16

JOANNA DAY, Attorney
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

50

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et al.,*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: _____8/3/16_____

SHAWN M. GARVIN
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

Date: _____7/15/16_____

MARY B. COE
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

Date: _____7/14/16_____

DOUGLAS FRANKENTHALER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

51

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et al.,*

FOR THE PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION

Date: ___7/16/16___

JOHN J. STEFANKO
Executive Deputy Secretary for Programs
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101

Date: ___July 18, 2016___

ALEXANDRA C. CHIARUTTINI
Chief Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101

Date: 7/14/2016

MICHAEL J. HEILMAN
Assistant Regional Counsel
Department of Environmental Protection
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222

52

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et al.,*

FOR DEFENDANTS

CONSOL ENERGY INC.

Date: 7/12/16

JAMES A. BROCK
Executive Vice President and Chief Operating
  Officer – Coal Operations
CONSOL Energy Inc.
1000 CONSOL Energy Drive
Canonsburg, PA 15317

CONSOL PENNSYLVANIA COAL COMPANY LLC

Date: 7/12/16

JAMES A. BROCK
President
Consol Pennsylvania Coal Company LLC
1000 CONSOL Energy Drive
Canonsburg, PA 15317

CNX COAL RESOURCES LP
By:  CNX Coal Resources GP LLC, its general partner

Date: 7/12/16

JAMES A. BROCK
Chief Executive Officer
CNX Coal Resources GP LLC
1000 CONSOL Energy Drive
Canonsburg, PA 15317

53